# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

MIRIAM LEVY,

Plaintiff,

-vs-                                     Case No.  6:10-cv-183-Orl-35GJK

COMMISSIONER OF SOCIAL
SECURITY,

Defendant.

_____

# REPORT AND RECOMMENDATION

## TO THE UNITED STATES DISTRICT COURT

Plaintiff Miriam Levy (the "Claimant") appeals to the district court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for benefits. *See* Doc. No. 1.  The Claimant maintains she became disabled on May 4, 2002, due to her paranoid schizophrenia. R. 110-15, 339-40.  At the administrative level, the Commissioner denied the Claimant's applications, finding that she is not disabled. R. 4-7.  For the reasons set forth below, it is recommended that the Commissioner's decision be **REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g)**.

## I.      MEDICAL HISTORY

On May 5, 2002, the Claimant was admitted to Lakeside Alternatives, Inc. ("Lakeside Alternatives") pursuant to the Baker Act due to "risk taking behavior and also psychosis." R. 229.  The police report indicated that the Claimant was riding in the car with her son when she grabbed the wheel and attempted to pull them in the direction of a tree. *Id.*  The Claimant had

been experiencing auditory hallucinations for the past five years and she firmly believed that there was a computer chip imbedded in her jaw by an oral surgeon, enabling family members to communicate with the voices. *Id.* The Claimant reported that she had one previous psychiatric hospitalization. *Id.*

Jesse O. Tan, M.D., noted that the Claimant was rather perplexed and confused during the interview. R. 230. She showed evidence of a thought disorder and appeared delusional and paranoid. R. 231. Dr. Tan diagnosed the Claimant with Psychotic Disorder, not otherwise specified (NOS), strongly consider chronic, paranoid type schizophrenia. R. 231. On May 28, 2002, the Claimant was discharged from Lakeside Alternatives but she continued to receive regular treatment. R. 226-28. She was prescribed Risperdal and Cogentin. R. 228.

On June 13, 2002, Claimant returned to Lakeside Alternatives and was reportedly doing well. R. 224. She was sleeping okay and denied any problems with her medications. *Id.* The Claimant continued to be evaluated every few months at Lakeside Alternatives through October 10, 2005. R. 198-223. She reported that she was doing well on her medications and had no complaints. *Id.*

On October 28, 2005 and March 10, 2006, two psychiatric review techniques were completed by Eric Wiever, Ph.D. and Theodore Weber, Psy.D., respectively, based on a review of the Claimant's medical record. R. 167-94. They indicated that the Claimant's disability claim was being denied based on insufficient evidence because she only had one medical source, Lakeside Alternatives, and there was no medical evidence prior to the date last insured, September 30, 2002, that would establish a severe impairment. R. 179, 193.

On March 20, 2006, the Claimant presented to Lakeside Alternatives indicating that she had been experiencing anxiety and panic attacks, and only when she came to her doctor appointments, the panic attacks would stop. R. 195.  The Claimant's memory and concentration were fair, her mood/affect was congruent, there was no evidence of homicidal or suicidal ideation, and her insight and judgment were fair. *Id.*  Santiago De Los Angeles, M.D., diagnosed the Claimant with chronic paranoid schizophrenia and the physician noted that she was currently unable to work due to her mental illness. R. 196-97.

On July 10, 2006, Claimant returned to Lakeside Alternatives for a psychiatric re-evaluation. R. 256-57.  Dr. De Los Angeles noted that the Claimant was stable at the time and was calm and cooperative. R. 256.  She denied any suicide or homicide thoughts and auditory or visual hallucinations. *Id.*  Her orientation was intact to time, place and person; her memory was adequate for immediate, recent and remote; and her insight and judgment was intact. R. 256-57. He diagnosed her with chronic paranoid schizophrenia and high blood pressure. R. 257.  He noted that he would continue her on Risperdal at night and see her again in four months as per the Claimant and her daughter's wish. *Id.*  Over the next couple of visits, the Claimant reported doing well. R. 246-49.  On June 18 and November 7, 2007, the Claimant complained of mild anxiety and depression. R. 243, 265.  On February 11 and July 7, 2008, she reported doing well on her medications. R. 259, 262.

On September 11, 2008, at the request of the Claimant's attorney, the Claimant was seen by Ramon Martinez, M.D., for a one-time consultative examination. R. 268-80. Dr. Martinez diagnosed her with paranoid schizophrenia and indicated her prognosis was poor. R. 268.  Dr. Martinez indicated that the Claimant was markedly limited in several areas of mental activity:

the ability to remember locations and work-like procedures; the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to work in coordination with or proximity to others without being distracted by them; the ability to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to interact appropriately with the general public; the ability to respond appropriately to changes in the work setting;  the ability to travel to unfamiliar places or use public transportation; and the ability to set goals or make plans independently. R. 271-73. Dr. Martinez noted that when the Claimant returned to work in 1998-99, she became very psychotic. R. 273.  He indicated that she is incapable of tolerating even a "low stress" work setting and would be absent more than three times a month. R. 274-75. He opined that she cannot manage benefits in her own best interest. R. 275.

Dr. Martinez noted that the Claimant was stable on Risperdal and that her daughter makes sure she keeps her appointments. R. 277.  He noted that she is "very disorganized in her thought process and thinking." *Id.*  He indicated that the Claimant had a "very blunted affect and she was passive during the interview." R. 279.  He stated that she is very well taken care of; her speech is clear, coherent and she is cooperative, however, her speech is not productive. R. 279. The Claimant had difficulty recalling dates and specific information, especially when she was disorganized in her thought process, but her daughter was able to provide some information. *Id.* The Claimant reported that she had not experienced any auditory hallucinations recently, she was alert and oriented to time, place and person. *Id.*  Dr. Martinez noted that Claimant's memory was

somewhat impaired, but there was no clear cognitive deficit. *Id.*  Her insight, judgment and impulse control were fair but she had been extremely impaired in the past. *Id.*  As a result of the interview, Dr. Martinez stated:

> This patient has a diagnosis of Schizophrenia.  At the present time she is fairly stable under the treatment of Dr. De Los Angeles taking 2mg of Risperdal.  That is a good maintenance antipsychotic dosage.  Every time that the patient tries to be involved in social or work related activity she has a full-blown exacerbation of her Schizophrenia which ends up in hospitalizations, a very difficult life, and disorganization.  She maintains a very blunted affect.  She maintains some symptoms that grant the Global Assessment of Functioning of 55 even if she is not acutely psychotic.
>
> At this time we believe that this patient is not capable of engaging in gainful employment even if she has a very high degree of education because she is not able to tolerate the stress of work without having a psychotic breakdown.  This is well proven from her last attempt to work in 1998 when she became overly psychotic.  Within a medical degree of certainty, the patient has been unable to work since her 1998 attempt.

R. 279-80.

## II.     ADMINISTRATIVE PROCEEDINGS

On August 8, 2005, the Claimant filed an application for disability insurance benefits and supplemental security income, alleging disability as of January 1, 1999. R. 110-15, 152.  On September 5, 2007, Administrative Law Judge Robert Marcinkowski (the "ALJ") held an administrative hearing on the Claimant's claim for disability. R. 285-316.  The Claimant, her daughter, Lorin Hall, and vocational expert ("VE") Jane Beougher testified at the hearing. *Id.*

The Claimant testified that she lives with her daughter and on a typical day she takes a shower, straightens up the house, makes the beds, does laundry, lets the dog outside, prepares dinner, watches the television and reads. R. 297.  She testified that it's necessary she have a quiet day. *Id.*  When asked whether she go to the grocery store by herself, the Claimant answered "no"

and explained that there have been times when her daughter has left her alone for short periods of time at the store, which caused her to panic, become overwhelmed by stimuli and shutdown. *Id.* She testified that a large amount of people in a small space tends to overwhelm her. *Id.* The Claimant's daughter testified that she "keep[s] an environment for her [mother] that is very low stress." R. 310. Her daughter indicated that in public, the Claimant is okay as long as she is with her. *Id.* They grocery shop together and will occasionally go to the movies. *Id.*

On October 1, 2007, the ALJ issued a decision finding that Claimant is not disabled. R. 34-42. On June 25, 2008, the Appeals Council remanded the case back to the ALJ because evidence from the VE was obtained post-hearing and was not proffered to the Claimant or her representative. R. 81.[1] On October 9, 2008, the ALJ held a second administrative hearing on the Claimant's claim for disability. R. 317-41. The Claimant, Lorin Hall and VE Susanna Roche testified at the hearing. *Id.* At the hearing, the Claimant amended her onset date of disability to May 4, 2002. R. 339-40. The Claimant testified that she was still living with her daughter and son-in law. R. 321. She testified that on an average day she does simple chores and sometimes is able to make dinner, but occasionally, she becomes anxious and has to stop what she is doing and breathe. R. 325. The Claimant stated that she does not do anything outside of the home by herself. R. 326. She and her daughter may go to the movies and the grocery store, but when she tried to go to the grocery store by herself, she had a panic attack and had the grocery store call her daughter to come get her. *Id.*

On November 26, 2008, the ALJ issued a decision finding that the Claimant is not disabled. R. 14-24. The ALJ made the following significant findings:

---

[1] The Appeals Council noted: "When additional evidence is received after the hearing from a source other than the [C]laimant or her representative, the evidence must be proffered in order to give the [C]laimant and representative the opportunity to examine, comment on, object to, refute the evidence or request a supplemental hearing." R. 81.

1. The Claimant has the following severe impairment:  Psychotic Disorder. R. 17.

2. The Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. R. 18.

3. The Claimant has the residual functional capacity ["RFC"] to perform a full range of light work at all exertional levels but with the following nonexertional limitations:  perform simple routine tasks. R. 19.

4. The Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however the Claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible. R. 20.

The ALJ stated that in finding the Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments, "the medical evidence does not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment . . ." R. 18.  The ALJ considered the "paragraph B" criteria, which requires that the mental impairment result in at least two of the following:  marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration. R. 19.  The ALJ found that the "paragraph B" criteria were not satisfied. *Id.*  In support of such finding, he stated:

In activities of daily living, the [C]laimant has mild restriction.  In social functioning, the [C]laimant has moderate difficulties.  With regard to concentration, persistence or pace, the [C]laimant has moderate difficulties.  As for episodes of decompensation, the [C]laimant has experienced one to two episodes of decompensation, each of extended duration.  The [C]laimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations.  She testified that she showers, straightens the house, makes beds, does laundry, prepares dinner, watches television and reads.  In a visit to Lake Alternatives on November 4, 2007, the

-7-

> [C]laimant was doing well and denied hallucinations.  Her sleep and
> appetite were good.  On June 16, 2008, the [C]laimant reported she was
> doing well.  She was sleeping well and compliant with medications. She
> had no problems.

R. 19.   The ALJ stated that he "also considered whether the "paragraph C" criteria were

satisfied" and found that "the evidence fails to establish the presence of the "paragraph C"

criteria." *Id.*   The ALJ did not state any basis for his finding that the paragraph C criteria were

not met. *Id.*

In determining the Claimant's RFC, the ALJ gave significant weight to the medical

records from Lakeside Alternatives for the limited period from November 5, 2007 to July 7,

2008. R. 21.   During that time, the ALJ stated the records indicate that the Claimant was doing

better on her medications, she denied hallucinations, she was sleeping and eating better and she

denied any problems. *Id.*   The ALJ gave "little weight" to Dr. Martinez's opinion because he was

a one-time examiner and his examination occurred six years after the Claimant's date last insured

and his opinion is "inconsistent with the medical evidence of record." R. 18.[2]

In support of his finding that the Claimant's subjective complaints lacked credibility, the

ALJ stated:

> The [C]laimant has described daily activities, which are not limited to
> the extent one would expect, given the complaints of disabling
> symptoms and limitations.  She testified that she showers, straightens the
> house, makes beds, does laundry, prepares dinner, watches television and
> reads.   The [C]laimant's [sic] goes to the movies with her daughter
> sometimes.   Although the [C]laimant has received treatment for the
> allegedly disabling impairments, that treatment has been essentially
> routine and/or conservative in nature.   She has only been hospitalized
> once in May 2002.  The evidence shows that she has been stabilized with
> medication and has improved significantly since that date.  On January 8,
> 2003, the [C]laimant reported that she was doing well.   Her thoughts
> were clear and she denied any adverse side effects from medication, and

---

[2] The ALJ did not explain the inconsistency he perceived. *Id.*

> she was looking for a part-time job.  In a visit to Lakeside Alternatives in November 4, 2007, the [C]laimant was doing well and denied hallucinations.  Her sleep and appetite were good.  On July 7, 2008, the [C]laimant reported she was doing well.  She was sleeping good and compliant with medications.  Her Global Assessment of Functioning was estimated at 60.

R. 20-21.

Upon request by the Claimant, the Appeals Council denied review of the ALJ's decision.

R. 3-7.  On February 1, 2010, Claimant filed an appeal before this Court.  Doc. No. 1.

## III.  THE ISSUES

The Claimant maintains that the ALJ erred as follows:  1) the ALJ's finding that the Claimant's psychotic disorder does not meet or equal the criteria of a listed impairment is based on legal error and is not supported by substantial evidence; 2) the ALJ erred in rejecting Dr. Martinez's RFC opinion and the ALJ's RFC finding is not supported by substantial evidence; and 3) the ALJ's finding that the Claimant lacks credibility is not supported by substantial evidence. Doc. No. 12 at 8-14.   Thus, the Claimant argues that the Commissioner's decision should be reversed and remanded for further proceedings. *Id.*

The Commissioner argues that substantial evidence supports his decision that the Claimant is not disabled.  Doc. No. 15.  The Commissioner maintains that the ALJ properly:  1) concluded that the Claimant does not meet or equal a listing; 2) evaluated the medical evidence in determining the Claimant's RFC; and 3) evaluated the Claimant's credibility.  *Id.* at 4-18. Thus, the Commissioner maintains that the decision should be affirmed. *Id.*

## IV.    LEGAL STANDARDS

### A.    THE ALJ'S FIVE-STEP DISABILITY ANALYSIS

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a).  The steps are followed in order.  If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 CFR §§ 404.1520(b), 416.920(b).  Substantial gainful activity ("SGA") is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves performing significant physical or mental activities. 20 CFR §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually performed for pay or profit, whether or not a profit is realized. 20 CFR §§ 404.1572(b), 416.972(b).  Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA. 20 CFR §§ 404.1574, 404.1575, 416.974, 416.975.  If an individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.  20 CFR § 404.1521.  An impairment or combination of impairments is "not severe"

when medical or other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 CFR §§ 404.1521, 416.921.

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *See Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987); *Davis*, 985 F.2d at 534. A mere diagnosis is insufficient to establish that an impairment is severe. *See Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1211 (M.D. Ala. 2002) (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)). A claimant has the burden of proof to provide substantial evidence establishing that a physical or mental impairment has more than a minimal effect on a claimant's ability to perform basic work activities. *See Bridges v. Bowen*, 815 F.2d 622, 625-26 (11th Cir. 1987). However, a remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly. *Vega v. Comm'r*, 265 F.3d 1214, 1219 (11th Cir. 2001). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis

proceeds to the third step.

At step three, it must be determined whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listing(s)"). 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the claimant's impairment or combination of impairments meets or medically equals the criteria of a Listing and meets the duration requirement (20 CFR §§ 404.1509, 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the claimant's RFC. 20 CFR §§ 404.1520(e), 416.920(e). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments. In making this finding, the ALJ must consider all of the claimant's impairments, including those that may not be severe. 20 CFR §§ 404.1520(e), 404.1545, 416.920(e), 416.945.

Next, the ALJ must determine at step four, whether the claimant has the RFC to perform the requirements of his past relevant work. 20 CFR §§ 404.1520(f), 416.920(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, and pull. *See* 20 C.F.R. § 404.1545(b). The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). If the claimant is unable to establish an impairment that meets the Listings, the claimant must prove an inability to perform the claimant's past relevant work. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th

Cir. 1999).  The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established.  In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA. 20 CFR §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  If the claimant has the RFC to do his past relevant work, the claimant is not disabled.  If the claimant is unable to do any past relevant work, the analysis proceeds to the fifth and final step.

At the last step of the sequential evaluation process (20 CFR §§ 404.1520(g), 416.920(g)), the ALJ must determine whether the claimant is able to do any other work considering his RFC, age, education and work experience.  In determining the physical exertional requirements of work available in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy.  20 CFR § 404.1567.  If the claimant is able to do other work, he is not disabled.  If the claimant is not able to do other work and his impairment meets the duration requirement, he is disabled.  Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration.  In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the RFC, age, education and work experience. 20 CFR §§ 404.1512(g), 404.1560(c), 416.912(g), 416.960(c).

### B.     THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). To remand under sentence four, the district court must either find that the Commissioner's decision applied the incorrect law, fails to provide the court with sufficient reasoning to determine whether the proper law was applied, or is not supported by substantial evidence. *Keeton v. Dep't of Health & Human Serv.*,

21 F.3d 1064, 1066 (11th Cir. 1994) (reversal and remand appropriate where ALJ failed to apply correct law or the ALJ failed to provide sufficient reasoning to determine where proper legal analysis was conducted) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)); *Jackson v. Chater*, 99 F.3d 1086, 1090-91 (11th Cir. 1996) (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984).  A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985). The district court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences. *Jackson*, 99 F.3d at 1089-92, 1095, 1098.  Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*,

732 F.2d 827, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his

basis for determining that claimant's depression did not significantly affect her ability to work).[3]

## V.   <u>ANALYSIS</u>

### A. WHETHER THE ALJ ERRED IN FINDING THAT CLAIMANT'S PSYCHOTIC DISORDER DOES NOT MEET OR EQUAL THE CRITERIA OF A LISTED IMPAIRMENT

The Listings identify impairments which are considered severe enough to prevent a

person from engaging in gainful activity.  By meeting a Listing or otherwise establishing an

equivalence, a Plaintiff is presumptively determined to be disabled regardless of his age,

education, or work experience.  Thus, an ALJ's sequential evaluation of a claim ends if the

claimant can establish the existence of a Listing.  *Edwards v. Heckler*, 736 F.2d 625, 628 (11th

Cir. 1984).  However, at this stage of the evaluation process, the burden is on the plaintiff to

prove that he or she is disabled.  *Bell v. Bowen*, 796 F.2d 1350, 1352 (11th Cir. 1986); *Wilkinson

v. Bowen*, 847 F.2d 660, 663 (11th Cir. 1987).  In this circuit, a plaintiff must present specific

findings that meet the various tests listed under the applicable Listing.  *Bell*, 796 F.2d at 1353.

Mere diagnosis of a listed impairment is not enough as the record must contain corroborative

medical evidence supported by clinical and laboratory findings.  *Carnes v. Sullivan*, 936 F.2d

1215, 1218 (11th Cir. 1991).

The ALJ stated that in finding the Claimant does not have an impairment or combination

of impairments that meets or medically equals one of the Listings, "the medical evidence does

not document listing-level severity, and no acceptable medical source has mentioned findings

[3] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation).  After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction.  *Jackson*, 99 F.3d at 1089, 1095.

equivalent in severity to the criteria of any listed impairment . . ." R. 18.  The ALJ considered the "paragraph B" criteria, which requires that the mental impairment result in at least two of the following:  marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration. R. 19.  The ALJ found that the "paragraph B" criteria were not satisfied. *Id.*[4]  The ALJ also considered whether the "paragraph C" criteria were satisfied and found that "the evidence fails to establish the presence of the "paragraph C" criteria. *Id.*

Claimant maintains that the ALJ erred by failing to demonstrate that he considered whether Claimant's psychotic disorder meets or equals the criteria of Listing 12.03 for schizophrenic, paranoid, or other disorders. Doc. No. 12 at 10.

Section 12.03 of 20 C.F.R. Pt. 404, Subpt. P, App. 1, states:

12.03 *Schizophrenic, Paranoid and Other Psychotic Disorders*: Characterized by the onset of psychotic features with deterioration from a previous level of functioning.
The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

> A. Medically documented persistence, either continuous or intermittent, of one or more of the following:
>   1. Delusions or hallucinations; or
>   2. Catatonic or other grossly disorganized behavior; or

---

[4] In support of such finding, he stated:
   In activities of daily living, the [C]laimant has mild restriction.  In social functioning, the [C]laimant has moderate difficulties.  With regard to concentration, persistence or pace, the [C]laimant has moderate difficulties.  As for episodes of decompensation, the [C]laimant has experienced one to two episodes of decompensation, each of extended duration.  The [C]laimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations.  She testified that she showers, straightens the house, makes beds, does laundry, prepares dinner, watches television and reads.  In a visit to Lake Alternatives on November 4, 2007, the [C]laimant was doing well and denied hallucinations.  Her sleep and appetite were good.  On June 16, 2008, the [C]laimant reported she was doing well.  She was sleeping well and compliant with medications. She had no problems.
R. 19.

3. Incoherence, loosening of associations, illogical thinking, or poverty of content of speech if associated with one of the following:
   a. Blunt affect; or
   b. Flat affect; or
   c. Inappropriate affect; or
   4. Emotional withdrawal and/or isolation;

AND

B. Resulting in at least two of the following:
   1. Marked restriction of activities of daily living; or
   2. Marked difficulties in maintaining social functioning; or
   3. Marked difficulties in maintaining concentration, persistence, or pace; or
   4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic schizophrenic, paranoid, or other psychotic disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
   1. Repeated episodes of decompensation, each of extended duration; or
   2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
   3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, section 12.03. The Claimant maintains that she meets the criteria set forth in subsection C of section 12.03. Doc. No. 12 at 10. Claimant argues that the first requirement of subsection C is met because she has been repeatedly diagnosed with paranoid schizophrenia since May of 2002. *Id.* Claimant states that she also meets subsection 3 of subsection C because she has had a "highly supportive living arrangement" provided by her daughter since her May 2002 discharge. *Id.* Referencing their testimony at the administrative hearing, the Claimant notes that her daughter, Lorin Hall, provides a stress free living

environment for the Claimant, giving her little or no responsibility. *Id.* at 10-11.  The Claimant argues that the ALJ should have considered these factors at step three of his analysis. Doc. No. 12 at 11.  Furthermore, Claimant maintains that the case should be remanded because the ALJ's decision does not reflect that he specifically considered section 12.03 in his analysis. *Id.*

The Commissioner states that Claimant failed to meet her burden of establishing she is disabled under Listing 12.03. Doc. No. 15 at 5. The Commissioner notes that the Claimant's condition was stabilized on medication and, therefore, her condition is not disabling. Doc. No. 15 at 8 (citing *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987) ("A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling.").   The Commissioner states that the ALJ explained in his opinion the requirements to satisfy the "paragraph B" criteria of the mental Listings and found that the Claimant did not satisfy such criteria. Doc. No. 15 at 10.  Thereafter, the ALJ considered whether the "paragraph C" criteria were satisfied, but found that the evidence did not support such a finding. *Id.*  The Commissioner states that substantial evidence supports the ALJ's decision. *Id.* at 10-11.

As set forth above, the ALJ stated in his decision that he considered whether the "paragraph C" criteria were satisfied and found that "the evidence fails to establish the presence of the "paragraph C" criteria." R. 19.  Aside from that single statement, that he considered whether the paragraph C criteria were satisfied and determined they were not, the ALJ offered no basis or support for his finding.  The record indicates that the Claimant has been repeatedly diagnosed with chronic paranoid schizophrenia in medical records from March 20, 2005 through September 11, 2008.  Those records may support a finding that the first portion of the paragraph

C criteria which requires a "[m]edically documented history of a chronic schizophrenic, paranoid, or other psychotic disorder of at least 2 years' duration," has been met. R. 196-97, 243, 246, 249, 252, 257, 268, 279.   The Claimant has been living with her daughter "in a highly supportive living arrangement" since she was Baker Acted in May of 2002. *See, e.g.*, R. 297, 310, 321. The Claimant's daughter testified that she "keep[s] an environment for her [mother] that is very low stress." R. 310.   Thus, there is evidence suggesting that Claimant may meet the paragraph C criteria set forth above. 20 C.F.R. Pt. 404, Subpt. P, App. 1, section 12.03.   Without a more thorough analysis from the ALJ as to why he found the Claimant does not satisfy the paragraph C criteria, the Court is unable to determine whether his decision is supported by substantial evidence. *See, e.g., Williams v. Apfel*, 73 F. Supp.2d 1325, 1339-40 (M.D. Fla. 1999) (The court noted that the ALJ did not discuss whether the claimant's condition met the paragraph "C" criteria and the court found that there was substantial evidence in the record establishing that the "C" criteria were met).   Accordingly, it is recommended that the Court find that the ALJ's decision is not supported by substantial evidence and remand the case for further proceedings consistent with this opinion.

## B.  WHETHER THE ALJ ERRED IN REJECTING DR. MARTINEZ'S OPINION

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential process for determining disability. The ALJ may, however, reject any medical opinion if the evidence supports a contrary finding.   *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1986). Nonetheless, the ALJ must state with particularity the weight given different medical opinions and the reasons therefore, and the failure to do so is reversible error.   *Sharfarz v. Bowen*, 825

F.2d 278, 279 (11th Cir. 1987).  Without the ALJ stating the specific weight given to different medical opinions and the reasons therefore, it is impossible for a reviewing court to determine whether the ultimate decision is supported by substantial evidence.  *See e.g. Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985).[5]  Absent good cause, the opinions of treating physicians must be accorded substantial or considerable weight.  *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

> Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir.2004) (citations omitted); *see also Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986).

*Johnson v. Barnhart*, 138 Fed.Appx. 266, 269 (11th Cir. 2005).

While the opinion of a one-time examining physician may not be entitled to deference, especially when it contradicts the opinion of a treating physician, the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician. *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (opinions of one-time examiners are not entitled to deference because they are not treating physicians).  The opinions or findings of a non-examining physician are entitled to little weight when they contradict the opinions or findings of a treating or examining physician.  *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).  "The opinion of a non-examining physician does not establish the good cause necessary to reject the opinion of a treating physician."  *Johnson,* 138 Fed.Appx. at 269.  Moreover, the opinions of a non-

---

[5] The Regulations maintain that the administrative law judges "will always give good reasons in [their] . . . decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. § 404.1527(d)(2).

-21-

examining physician do not constitute substantial evidence when standing alone.  *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

In determining the Claimant's RFC, the ALJ gave significant weight to the treating physician medical records from Lakeside Alternatives from November 5, 2007 to July 7, 2008. R. 21.  He indicated that the Claimant was doing better on her medications, she denied hallucinations, she was sleeping and eating better and she denied any problems. *Id.*  The ALJ gave little weight to the examination of Dr. Martinez because he was a one-time examiner and his examination occurred six years after the Claimant's date last insured and is inconsistent with the medical evidence of record. R. 18.

Claimant maintains that the ALJ erred in rejecting the opinion of Dr. Martinez. Doc. No. 12 at 11.  Claimant states that Dr. Martinez is the only physician of record to have examined the Claimant and assessed her mental RFC. *Id.*   Thus, Claimant states that his opinion is "invaluable" to this case. *Id.* Furthermore, the Claimant argues that the ALJ did not offer a valid basis for giving Dr. Martinez's opinion little weight. *Id.* Claimant states:  "As the only opinion from a specialist who had actually performed a thorough psychiatric evaluation, Dr. Martinez'[s] opinion was worthy of great weight in the disability analysis." *Id.* at 12.  Furthermore, Claimant maintains that because Dr. Martinez evaluated her six years after the expiration of her insured status is not a valid reason for discrediting his opinion. Doc. No. 12 at 12.  She argues that his opinion addressed her condition as of 1998 based on his review of her medical records. *Id.*  Thus, Claimant states that Dr. Martinez's opinion was erroneously rejected and, as such, the ALJ's RFC assessment is not supported by substantial evidence. *Id.*

The Commissioner maintains that substantial evidence supports the ALJ's decision to

give little weight to the opinion of Dr. Martinez. Doc. No. 15 at 13.  The Commissioner argues

that Dr. Martinez was not a treating physician and his opinion is not entitled to any special

deference. *Id.*  Furthermore, the Commissioner states that Dr. Martinez's opinion was given six

years after Claimant's date last insured and was inconsistent with the record as a whole. *Id.*  The

Commissioner notes that the treating medical records from Lakeside Alternatives consistently

report that the Claimant was doing well on her medications. *Id.* at 14-15.  Accordingly, the

Commissioner argues that the ALJ properly gave Dr. Martinez's opinion little weight. *Id.* at 15.

As previously indicated, the record reflects that Claimant has been repeatedly diagnosed

with chronic paranoid schizophrenia, but the ALJ only states that the Claimant suffers from a

psychotic disorder. R. 17, 196-97, 243, 246, 249, 252, 257, 268, 279.  The ALJ gave "significant

weight" to the medical records from Lakeside Alternatives for the period of November 5, 2007 to

July 7, 2008. R. 21.[6]  By selecting the above time frame of less than a year, the ALJ apparently

discounted the balance of the medical records from Lakeside Alternatives which span from May

of 2002 through June of 2007. That specific time frame excludes Dr. De Los Angeles' March 20,

2006 opinion that the Claimant suffered from chronic paranoid schizophrenia and was unable to

work due to her mental illness. R. 196-97.  The ALJ did not specifically address or weigh Dr. De

Los Angeles' opinion in his decision.  Furthermore, the ALJ does not provide any basis for his

decision to give significant weight to only a small portion of the medical record from Lakeside

Alternatives, consisting of three (3) visits, rather than the records from Lakeside Alternatives as a

whole.  *See Goble v. Astrue*, 385 Fed.Appx. 588, 593 (7th Cir. 2010) (citing *Myles v. Astrue*, 582

F.3d 672, 678 (7th Cir. 2009) ("An ALJ is obligated to consider all relevant medical evidence

---

[6] In support of such finding, the ALJ states that the Claimant was doing better on her medications and she denied hallucinations and was sleeping and eating better. *Id.*

and may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding."). Therefore, it is recommended that the Court find the ALJ's decision is not supported by substantial evidence and that the ALJ erred in not weighing Dr. De Los Angeles' opinion. *Sharfarz*, 825 F.2d at 279; *Lamb*, 847 F.2d at 703.

With respect to Dr. Martinez, the ALJ gave little weight to his opinion because he was a one-time examiner and his examination is six (6) years past the Claimant's date last insured and is inconsistent with the medical record of evidence. R. 18. The ALJ did not explain how Dr. Martinez's opinion is inconsistent with the medical record, which requires remand. *See Paltan v. Comm'r of Social Sec.*, 2008 WL 1848342, *5 (M.D. Fla. April 22, 2008) ("The ALJ's failure to explain how [the treating doctor's] opinion was 'inconsistent with the medical evidence' renders review impossible and remand is required."). Dr. Martinez is the only physician of record to have assessed the Claimant's limitations resulting from Claimant's psychotic disorder, which the ALJ found was a severe impairment.[7] He opined that the Claimant is not capable of engaging in gainful employment "because she is not able to tolerate the stress of work without having a psychotic breakdown." R. 279.[8] As set forth above, the opinion of a one-time examining physician may not be entitled to deference, especially when it contradicts the opinion of a treating physician. *Broughton*, 776 F.2d at 962; *McSwain*, 814 F.2d at 619. In this case, one-time examining physician, Dr. Martinez, and treating physician, Dr. De Los Angeles, were of the

---

[7] Dr. Martinez indicated that the Claimant was markedly limited in several areas of mental activity: the ability to remember locations and work-like procedures; the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to work in coordination with or proximity to others without being distracted by them; the ability to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to interact appropriately with the general public; the ability to respond appropriately to changes in the work setting; the ability to travel to unfamiliar places or use public transportation; and the ability to set goals or make plans independently. R. 271-73.

[8] He stated: "This is well proven from her last attempt to work in 1998 when she became overly psychotic. Within a medical degree of certainty, the patient has been unable to work since her 1998 attempt." R. 279.

same opinion that the Claimant suffers from chronic paranoid schizophrenia and is unable to work. R. 196-97, 279.  There is no other substantial evidence in the record regarding Claimant's mental limitations.[9]  Accordingly, it is recommended that the Court find the ALJ's decision is not supported by substantial evidence and the case should be reversed and remanded for further proceedings.[10]

## VI.    CONCLUSION

For the reasons stated above, it is **RECOMMENDED** that:

1. The Commissioner's decision be **REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further development of the medical record**; and

2. The Clerk be directed to enter Judgment in favor of the Claimant and close the case.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on January 6, 2011.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

---

[9] The ALJ did not order a mental assessment by an examining physician. *Reeves*, 734 F.2d at 522, n.1 (the ALJ should order a consultative examination when needed to make an informed decision); *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992) (the ALJ cannot act as both a judge and a physician). The two non-examining physician's psychiatric review techniques (R. 164-94), which were based on medical records, are not substantial evidence. *Lamb*, 847 F.2d at 703; *Spencer ex rel. Spencer*, 765 F.2d at 1094.

[10] Because the Court recommends reversal on the above issues, it is not necessary to address the remaining issue as to the Claimant's credibility.

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:


James Wilson Keeter
Morgan & Morgan, P.A.
20 N. Orange Ave.
P.O. Box 4979
Orlando, Florida        32802-4979


Susan R. Waldron
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida          33602


Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Nadine DeLuca Elder, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia        30303-8920


The Honorable Robert D. Marcinkowski
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Suite 300
3505 Lake Lynda Dr.
Orlando, Florida        32817-9801